EILEEN M. DECKER
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
GREGORY W. STAPLES (Cal. Bar No. 155505)
Assistant United States Attorney
    United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3535
    Facsimile: (714) 338-3523
    E-mail:    greg.staples@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 15-36-CJC |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Date: June 13, 2016 |
| BOBBY HAMBY, | Time: 10:00 a.m. |
| Defendant. | |

    The government submits its sentencing position.

Date: June 3, 2016                        /s/
                                            GREGORY W. STAPLES
                                            Assistant U.S. Attorney

**I. INTRODUCTION**

The government has no objections to the findings of the PSR. For the reasons stated below, the government recommends a sentence of 41 months, restitution of $1,257,628.55, three years of supervised release, and a special assessment of $200.

**II. BACKGROUND**

Defendant stipulated to the following factual basis as part of his plea agreement.

<u>The real estate investment scheme</u>

> Beginning in at least May 2008 and continuing to December 2011, in Orange County, within the Central District of California, defendant, both individually and through a business called B+E Family Investments LLC, engaged in a scheme to defraud investors with respect to the purchase, improvement, and resale of real estate.  Defendant told investors that he would use money invested by them to purchase and improve real property, resell the property at a profit, and share the profit with investors. Defendant told investors that he would provide them with a note and that he would secure their investments by placing the investors' names on the deed.  Defendant received approximately $2,460,000 from investors for use in the purchase, improvement, and resale of real estate.  Instead of using investors' money as promised, defendant used most of the money from investors for personal uses, including making phony return on investment payments to existing investors, paying his own home mortgage,

dues at the Yorba Linda Country Club, car payments, bankruptcy lawyers, restaurants, medical and dental bills, and department and retail stores such as Nordstrom, Macy's, Home Depot, and Costco.  In furtherance of the scheme, defendant caused the following to wire to occur in or affecting interstate commerce:

Count One

On February 10, 2011, a wire transfer of $62,500 from the account of victim M.Z. at Pacific Premier Bank to the account of Real Time Escrow at City National Bank.

The laser equipment scheme

Beginning in or about November 2010 and continuing to May 2011, defendant also solicited money from investors to purchase laser equipment for his chiropractic business.  Defendant solicited money more than $150,000 from investors with promises that it would be used to purchase laser equipment.  Instead, only approximately $5000 was spent towards the purchase of laser equipment.  The balance of the money was used by defendant for personal expenses, including cash withdrawals, home mortgage payments, private school tuition for defendant's children, credit card bills, restaurants, and stores such as Nordstrom, Loehmann's, and Kohl's.  In furtherance of the scheme, defendant caused the following to wire to occur in or affecting interstate commerce:

Count Two

On May 13, 2011, a wire transfer of $52,250 from the account of

3

  victim J.S. at Pacific Premier Bank to account of B+E Family
  Investments LLC at Bank of America.

  In soliciting money for both schemes and using it as described
  above, defendant acted with the intent to defraud.  In so
  acting, defendant caused at least 22 victims to lose
  approximately $1,801,410.

Since entry of the plea, Probation has determined the actual loss amount to be $1,257,628.55.  The lower loss amount is based on money defendant returned to victims.

**III. GUIDELINES CALCULATIONS**

  The parties stipulated to the following Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics | | |
| Loss > $1 million: | 16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| Adjustments | | |
| > 10 victims | 2 | U.S.S.G. § 2B1.1(b)(2)(A) |

The parties are free to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

  Probation agrees with the base offense level of 7, and a 2-level victim enhancement.  Probation determined an actual loss of $1.25 million that results in a 14-level enhancement under the 2015 Guidelines (as opposed to a 16-level enhancement under the 2014 Guidelines).  The government agrees with Probation's calculations.

A base offense level of 7, a 14-level enhancement for loss, a 2-level victim enhancement, and a 3-level reduction for acceptance of responsibility yields a total offense level of 20.  Based on a criminal history category of I, the resulting sentence range is 33-41 months.  Because of the impact on the victims in this case, the government recommends a sentence of 41 months.[1]

**IV.  SECTION 3553 FACTORS**

A sentence of 41 months is no greater than necessary to achieve the goals of § 3553.  The loss in this case is on the low end of fraud cases seen in federal court.  But the impact on the victims is no less severe.  Several of the victims are elderly and have no way to replace the money they lost to defendant.  PSR ¶ 18.a ("I am 81 years old and no longer able to work."); 18.b ("I am 80 years old, no longer able to work since suffering from a stroke in October 2014, which immobilized my right leg and arm, forcing me to use a walker."); 18.i ("As a widower living on a fixed income, I was counting on the money I invested with Bobby Hamby for extra income during my retirement years.")

The impact on the victims shows the offense in this case is serious.  A term of 41 months will provide a just punishment, promote respect for the law, and provide for adequate deterrence.  The sentence should be commensurate with the harm to the victims.  A

---

[1] The plea agreement binds the government to a low-end recommendation only if the total offense level is 22 or higher.  Plea Agreement ¶ 3.d.  Because the offense level is 20, the government is not bound to recommend a low end sentence.

number of victims will live out their lives under a cloud, as each day brings worries over money, and the anger and other feelings that flow from defendant's betrayal of their trust.  The government does not dispute that, given his age, defendant may be a low risk for recidivism, but that is only one measure courts consider in imposing a sentence.  In addition, defendant's age also makes meaningful restitution unlikely.  Justice in this case – the need to impose a just punishment – requires a sentence of 41 months.

**V.    CONCLUSION**

For the foregoing reasons, defendant should be sentenced to a term of 41 months in custody, three years of supervised release, restitution of $1,257,628.55, along with the other conditions recommended by Probation.